# IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **JENNIFER SEME** | : | |
| Plaintiff | : | |
| | : | |
| v. | : | **CIVIL ACTION NO. 19-00857** |
| | : | |
| **GIBBONS P.C.** | : | |
| Defendant. | : | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND TO STAY THIS ACTION

Respectfully submitted,

**CONSOLE MATTIACCI LAW, LLC**

By:    */s/ Fernando I. Rivera*
Stephen G. Console, Esquire
Laura C. Mattiacci, Esquire
Katherine C. Oeltjen, Esquire
Fernando I. Rivera, Esquire
1525 Locust Street, 9th Fl.
Philadelphia, PA 19102
(215) 545-7676 (office)
mattiacci@consolelaw.com
oeltjen@consolelaw.com
rivera@consolelaw.com

*Attorneys for Plaintiff*

Dated: April 2, 2019

# TABLE OF CONTENTS

I.      INTRODUCTION……………………………………………………………....1

II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY…………………...…2

III.    ARGUMENT………………………..…………………………….………...…..5

        A. Legal Standard………………………………………………………………...5

        B. This Arbitration Agreement is Invalid Because it is
           Unconscionable……………………………….…………………………………7

                1.   The Arbitration Agreement is procedurally unconscionable because it is
                     a contract of adhesion between parties of unequal bargaining power………..8

                2.   The Arbitration Agreement is substantively unconscionable because it
                     unreasonably and grossly favors Defendant……………………………......12

                        a.   The Arbitration Agreement is substantively unconscionable
                             because it mandates submission of Plaintiff's statutory claims to an
                             inherently unfair and biased arbitral forum………………….…..…13

                        b.   The Arbitration Agreement is substantively unconscionable because
                             it substantially limits the discovery to which Plaintiff would be
                             entitled in Court……………………………………………………...18

                        c.   The Arbitration Agreement is procedurally and substantively
                             unconscionable because it includes language that unreasonably
                             favors Defendant………………………………………………....…21

                        d.   The unconscionable provisions of the Arbitration Agreement cannot
                             be severed because these provisions demonstrate a systematic effort
                             to create a pro-employer forum that works to Defendant's advantage
                             and Plaintiff's detriment……………………………………………..22

        C.   The Federal Arbitration Act Violates Plaintiff's Seventh Amendment Right
             To a Jury Trial…………………………………………………………………23

        D.   In the Event the Court does not find the Arbitration Agreement Invalid and
             Unforceable on its Face, the Court Should Grant Plaintiff Leave to take
             Limited Discovery Regarding the Arbitration Agreement's Validity and
             Enforceability……………………………………………………………………25

IV.     CONCLUSION…………………………………………….………………………26

# Table of Authorities

**Cases**

*Aetna Ins. Co. v. Kennedy*, 301 U.S. 389 (1937) ................................................ 23

*Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256 (3d Cir. 2002) ........................... 5, 9

*Atacs Corp. v. Trans World Communs.*, 155 F.3d 659 (3d Cir. 1998) ..................... 6

*Beery v. Quest Diagnostics, Inc.*, 953 F. Supp. 2d 531 (D.N.J. 2013) .................... 13

*Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465 (DC Cir. 1997) ........................ 14, 15

*Commonwealth Coatings Corp. v. Cont'l Cas. Co.*, 393 U.S. 145–49 (1968) .......... 17

*Cordes v. Assocs. Of Internal Med.*, 87 A.3d 829–40 (Pa. Super. Ct. 2014) ........... 16

*Defendant. Dykeman v. McGill*, 2018 U.S. Dist. LEXIS 37174 (D.N.J. Mar. 6, 2018) .......... 20

*Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681 (1996) ........................................ 6

*Dunn v. B&B Auto.*, 2012 U.S. Dist. LEXIS 77526 (E.D.Pa. June 5, 2012) ............... 6

*Edwards v. HOVENSA, LLC*, 497 F.3d 355 (3d Cir. 2007) ............................. 12, 13

*Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018) ................................................... 7

*Gideon v. Wainright*, 372 U.S. 335 (1963) ........................................................... 25

*Gilmer v. Interstate/Johnson Lane Corp.*, 111 S.Ct. 1647 (1991) ........................... 13

*Griffin v. Credit One Fin.*, 2015 U.S. Dist. LEXIS 146601 (E.D. Pa. Oct. 29, 2015) ........... 26

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764 (3d Cir. 2013) ........ 26

*Guyden v. Aetna, Inc.*, 2006 U.S. Dist. LEXIS 73353 (D. Conn. Sept. 25, 2006) ........ 19

*Harris v. Green Tree Fin. Corp.*, 183 F.3d 173 (3d Cir. 1999) ................ 7, 8, 12, 22

*Hudyka v. Sunoco, Inc.*, 474 F.Supp.2d 712 (E.D. Pa. 2007) .............................. 5, 6

*John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132 (3d Cir. 1998) ................... 5

*Kelly Hopkins, et al. v. New Day Financial, et al.*, 643 F.Supp.2d 704 (E.D. Pa. 2009) .......... 8, 10

*Kirleis v. Dickie, McCamey & Chicolte, P.C.*, 560 F.3d 156 (3d Cir. 2009) ............... 6

*Lloyd v. HOVENSA, LLC*, 369 F.3d 263 (3d Cir. 2004) ......................................... 26

*Lucey v. FedEx Ground Package Sys.*, 2007 U.S. Dist. LEXIS 77454 (D.N.J. Oct. 18, 2007) ........ 19

*MacDonald v. CashCall, Inc.*, 883 F.3d 220 (3d Cir. 2018) ..................................... 7

*McAlister v. Sentry Ins. Co.*, 958 F.2d 550 (3d Cir. 1992) ..................................... 5

*McDonald v. City of Chi.*, 561 U.S. 742 (2010) ............................................... 24, 25

*McHugh v. P&G Paper Prods. Co.*, 776 A.2d 266 (Pa. Super. Ct. 2001) ................. 16

*McNulty v. H&R Block, Inc.*, 843 A.2d 1267 (Pa. Super. Ct. 2004) ...................... 6-7

*Nino v. Jewelry Exch., Inc.*, 609 F.3d 191 (3d Cir. 2010) ............................... passim

*Ostroff v. Alterra Healthcare Corp.*, 433 F. Supp. 2d 538 (E.D. Pa. 2006) ......... 13, 18, 19

*Penn v. Ryan's Family Steak Houses, Inc.*, 269 F.3d 753 (7th Cir. 2001) ................ 19

*Pennsylvania. Golden Gate National Senior Care, LLC, et al. v. Beverly Addison and Claudtte Brooks, et al.*, 2014 U.S. Dist. LEXIS 134280 (M.D. Pa. Sept. 24, 2014) ....................... 5,6

*Porreca and Charles Walton v. The Rose Group d/b/a Applebee's Neighborhood Grill and Bar*, 2013 U.S. Dist. LEXIS 173587 (E.D. Pa. Dec. 11, 2013)..................................................................passim

*Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221 (3d Cir. 2012) .........................................7, 8, 9

*Quiles*, 879 A.2d ......................................................................................................................................6

*Romero v. Allstate, Inc., Co.*, 158 F. Supp. 3d 369 ...............................................................................13

*Russell, et al. v. Chesapeake Applachia, L.L.C. et al.*, 2014 U.S. Dist. LEXIS 163401 (M.D. Pa. Nov. 21, 2014) ......................................................................................................................................................5

*Smith v. Phillips*, 455 U.S. 209 (1982) ..................................................................................................16

*Styczynski v. MarketSource, Inc.*, 2018 U.S. Dist. LEXIS 203871 (E.D. Pa. Nov. 30, 2018) ........... passim

*United States v. Harper*, 2014 U.S. Dist. LEXIS 101495 (D.V.I. July 25, 2014) ..............................16, 17

*United States v. Mitchell*, 690 F.3d 137 (3d Cir. 2012) .........................................................................16

*Walker v. Ryan's Family Steak Houses, Inc.*, 289 F. Supp. 2d 916 (M.D. Tenn. 2003) .........................19

*Zimmer v. CooperNeff Advisors, Inc.*, 523 F.3d 224 (3d Cir. 2008) ......................................................7-8

*Zumpano v. Omnipoint Commc'ns, Inc.*, 2001 U.S. Dist. LEXIS 376 (E.D. Pa. Jan. 18, 2001) ................7

**Statutes**

9 U.S.C. § 3 ............................................................................................................................................26

9 U.S.C. §§ 1–16 ......................................................................................................................................5

42 U.S.C. § 2000e ....................................................................................................................................1

43 P.S. § 951 et seq. ................................................................................................................................1

**Other**

*Debunking the Supreme Court's Preference for Binding Arbitration*, 74 Wash. U. L.Q. 637 (1996) ......15

Fed. R. Civ. P. 26 ...............................................................................................................................19, 20

Fed. R. Civ. P. 30 ....................................................................................................................................19

Fed. R. Civ. P. 33, 35, 45 ...................................................................................................................19, 20

Reginald Alleyne, *Statutory Discrimination Claims: Rights "Waived" and Lost in the Arbitral Forum*, 10 Hofstra Lab. L. J. 381 (1996)("Arbitrators will likely receive successive arbitration assignments from the same employer with far greater frequency than they will arbitrate for the same individual employee claimant") ..................................................................................................................................................15

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **JENNIFER SEME** | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | **CIVIL ACTION NO. 19-00857** |
| | : | |
| **GIBBONS P.C.** | : | |
| | : | |
| Defendant. | : | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS AND TO STAY THIS ACTION

## I.     INTRODUCTION

Plaintiff, Jennifer Seme, through her undersigned counsel, submits this Memorandum of Law in Opposition to Defendant's Motion to Dismiss and to Stay this Action pending Arbitration. Defendant, Gibbons P.C. ("Defendant"), discriminated against Plaintiff based on her sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951 *et seq.* ("PHRA") and the Philadelphia Fair Practices Ordinance, Bill No. 130684, Philadelphia § 9-1100 *et seq.* ("PFPO"). Because the arbitration agreement that the Defendant seeks to enforce is invalid and unenforceable, and for the reasons set forth in detail below, Plaintiff respectfully requests that this Court enter an Order denying Defendant's Motion.

Ms. Seme, while an Associate Attorney, was subjected to a sex-biased, pay and promotion system utilized by Defendant during her approximately eight years of employment. Defendant's promotion and pay practices advantage male attorneys, while disadvantaging female attorneys. Plaintiff, a highly-successful attorney within Defendant's Products Liability Group, routinely

received positive feedback for her performance and successfully managed client accounts and relationships, garnering continued business for Defendant, and positive outcomes for her clients. Despite strong performance throughout her employment, she was paid substantially less than her male peers. Defendant, without explanation, consistently refused to pay Plaintiff equitably, yet never denied that Plaintiff was paid less. Despite being paid substantially less, Plaintiff continued to work diligently on Defendant's behalf. When Plaintiff achieved the same metrics that male attorneys being promoted to Director (Partner) had achieved, Defendant refused to promote her. At the same time, the Defendant promoted multiple male Associate Attorneys who had not achieved the objective criteria purportedly used to select attorneys for promotion or who had benefited from Defendant's sex-biased manner of aiding male Associate Attorneys in developing "books of business" by way of the assignment of origination credit. Without warning, at a time when Plaintiff expected that Defendant would start the process of promoting her, Plaintiff was notified of her termination on July 18, 2018, without any legitimate, non-discriminatory reason given.

Defendant now seeks to have its unlawful conduct towards Plaintiff hidden by forcing Plaintiff to litigate her claims in a private, confidential arbitral process—which, as set forth in detail below, is unconscionable and designed to favor Defendant—rather than in a public forum in front of a jury of Plaintiff's peers. As such, Defendant's present motion to compel Plaintiff to proceed with her claims in arbitration should be denied and Plaintiff should be permitted to present her claims to a jury.

## II.   FACTUAL BACKGROUND/PROCEDURAL HISTORY

Plaintiff has been a licensed attorney for nearly thirteen (13) years. Pl.'s Compl. ¶ 18. On or about March 8, 2010, Plaintiff was hired by Defendant as an Associate Attorney in its

Philadelphia office and assigned to work in its Products Liability Group ("PLG"), where she reported to its Chair, Kimberly Catullo ("Catullo") (female), Director, and Alan Gries ("Gries") (male), Director, Products Liability Group and Administrative Director of the Philadelphia Office. Pl.'s Compl. ¶¶ 19–21.

At all times material hereto, Plaintiff performed her job in an exemplary manner, receiving positive performance appraisals. Pl.'s Compl. ¶ 24. Plaintiff was active in many professional associations, both locally and nationally, resulting in positive public attention to Defendant, *i.e.*, Plaintiff was: selected as a "Lawyer on the Fast Track" by the Legal Intelligencer; elected to the Board of Governors for the Philadelphia Bar Association; elected Treasurer of the Philadelphia Association of Defense Counsel; selected as a "Rising Star" by Super Lawyers; asked to speak at American Bar Association ("ABA") conferences; asked to contribute to ABA publications, including books; and, selected to a leadership position within the ABA Section of Litigation focusing on diversity and inclusion in the profession. Pl.'s Compl. ¶ 25. In addition, Plaintiff participated in pro bono activities, including by volunteering with the Support Center for Child Advocates and the Homeless Advocacy Project in Philadelphia, as well as serving on the Board of Directors of the Homeless Advocacy Project. Pl.'s Compl. ¶ 26.

During her employment, Defendant counseled Plaintiff that she was to perform to an annual billable hour requirement while, at the same time, cultivating new relationships and/or bolstering existing relationships in order to generate new or additional business for the firm. Pl.'s Compl. ¶ 27. Plaintiff was told that her ability to "originate" work for Defendant would play a role in whether or not she was promoted to Director. Pl.'s Compl. ¶ 28. However, Defendant employed a sex-biased system of assigning "origination" credit that substantially favored male attorneys. Pl.'s Compl. ¶ 29. Because of Defendant's sex-biased system of assigning origination credit,

Plaintiff was prevented from receiving credit for work that she had actually performed in a manner that she understood was designed to prevent her from being promoted to Director. Pl.'s Compl. ¶ 30. At the same time, male Directors allowed male associates within the PLG and the Philadelphia office to receive credit for their origination efforts in a manner that often over represented their efforts at securing new business. Pl.'s Compl. ¶ 31.

In or about January, 2016, after she received successful outcomes in several cases, resulting in positive feedback from clients and her supervisors, Plaintiff discussed her promotion prospects with Defendant and asked Defendant to adjust her pay to an equitable level with her peers, most of whom were male. Pl.'s Compl. ¶ 34. In response, William G. Frey ("Frey") said that "everyone wants to be paid more" and that Plaintiff "should be happy" if Defendant promoted her to "Of Counsel." Pl.'s Compl. ¶ 35. Prior to Frey's statement, Defendant promoted several male Associate Attorneys with substantially less experience than Plaintiff and who did not have the same professional accomplishments as Plaintiff. Pl.'s Compl. ¶ 36.

Between June, 2018, and July, 2018, Plaintiff earned multiple honors in connection with her work as an attorney for Defendant, *i.e.*, she was selected by the ABA Section of Litigation to organize and lead a panel at the 2019 Conference on Product Liability Litigation, and a major client of Defendant selected Plaintiff as part of a small panel of lawyers from across the country to speak at its upcoming training sessions. Pl.'s Compl. ¶ 62. However, on or about July 18, 2018, Plaintiff was notified by Defendant that her employment was terminated. Pl.'s Compl. ¶ 63. Plaintiff had not been previously informed that her job was in jeopardy or even that she would be denied partnership. Pl.'s Compl. ¶¶ 64, 66. On or about July 31, 2018, Defendant announced that it had hired Jonathan Woy ("Woy") (male) as an Associate Attorney in the PLG assigned to the Philadelphia Office to replace Plaintiff. Pl.'s Compl. ¶ 68.

Plaintiff filed her Complaint on February 27, 2019 (Dkt. No. 1). In Defendant's present Motion, it asserts that Plaintiff entered into an agreement to arbitrate during her employment with Defendant that precludes her from pursuing her claims in this Court (the "Arbitration Agreement"). As set forth in detail below, Defendant's Motion should be denied, as the arbitration provision at issue is invalid and unenforceable. Plaintiff should be permitted to proceed with her claims in this Court.

## III.   ARGUMENT

### A. Legal Standard

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, agreements to arbitrate employment disputes may be enforceable as long as the court determines that the parties entered into a valid agreement to arbitrate. *Hudyka v. Sunoco, Inc.*, 474 F.Supp.2d 712 (E.D. Pa. 2007) (*citing Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001)); *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 603 (3d Cir. 2002). When considering a motion to compel arbitration, the court need only determine whether a valid agreement exists between the parties, and whether the dispute at issue falls within the scope of that agreement. *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d Cir. 1998); *McAlister v. Sentry Ins. Co.*, 958 F.2d 550, 553 (3d Cir. 1992) (*citing Rocca v. Pa Gen Ins. Co.*, 516 A.2d 772–73 (Pa. Super. Ct. 1986)).

"Because '[a]rbitration is strictly a matter of contract,' arbitration agreements are subject to the principles of contract interpretation." *Russell, et al. v. Chesapeake Applachia, L.L.C. et al.*, 2014 U.S. Dist. LEXIS 163401 (M.D. Pa. Nov. 21, 2014) (*citing Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999)). Courts apply the laws of the state where the contract was formed to determine whether a valid agreement to arbitrate exists, in this case Pennsylvania. *Golden Gate National Senior Care, LLC, et al. v. Beverly Addison and Claudtte Brooks, et al.*,

2014 U.S. Dist. LEXIS 134280 (M.D. Pa. Sept. 24, 2014) (*citing Browne v. Acuren Inspection Inc.*, 2014 U.S. Dist. LEXIS 43965, *3 (D.VI. March 31, 2014)).

Under Pennsylvania law, a valid contract exists when: (1) all parties manifest an intention to be bound by the agreement; (2) the terms of the agreement are sufficiently definite to be enforced, and (3) the agreement is supported by consideration. *Atacs Corp. v. Trans World Communs.*, 155 F.3d 659, 666 (3d Cir. 1998); *Dunn v. B&B Auto.*, 2012 U.S. Dist. LEXIS 77526 (E.D.Pa. June 5, 2012) (*citing Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002)). "Agreements to arbitrate in Pennsylvania are upheld only where it is clear that the parties have agreed to arbitrate their disputes—employment or otherwise—in a clear and unmistakable manner." *Hudyka*, 474 F.Supp.2d at 716 (*citing Quiles v. Financial Exchange Co.*, 879 A.2d 281, 287 (Pa.Super.Ct 2005)). "Without knowing the terms of the contract, one cannot accept them." *Quiles*, 879 A.2d at 288. As such, the Court may grant a motion to compel arbitration only where there is no genuine issue of fact regarding the formation of the agreement to arbitrate, and the non-moving party is "entitled to the benefit of all reasonable doubts and inferences that may arise." *Kirleis v. Dickie, McCamey & Chicolte, P.C.*, 560 F.3d 156, 159 (3d Cir. 2009). As with any contract, state law defenses to contract apply to agreements to arbitrate. *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 687 (1996).

"The FAA specifically allows for the negation of an arbitration provision 'upon grounds as exist at law or equity' ... [t]hus, generally accepted contract defenses such as duress, illegality, fraud or unconscionability are available to challenge the application of an arbitration provision." *McNulty v. H&R Block, Inc.*, 843 A.2d 1267, 1272 (Pa. Super. Ct. 2004) ("While any doubts about the intent of parties or enforceability of the arbitration provision should be resolved in favor of arbitration, the existence of a controversy regarding some aspect of an arbitration provision does

not equate to 'doubt.' If that were so, then any dispute over the applicability of an arbitration provision would automatically be resolved in favor of arbitration leaving the court only to decide whether an arbitration provision had been executed.).[1]

## B.      The Arbitration Agreement is Invalid Because it is Unconscionable[2]

The Arbitration Agreement at issue is invalid because of its unconscionability, a "contractual remedy which serves to relieve a party from an unfair contract or from an unfair portion of a contract." *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999). To determine whether a contract is unconscionable, under Pennsylvania law, courts evaluate "whether one of the parties lacked a meaningful choice about whether to accept the provision [or contract] in question and the challenged provision or contract unreasonably favor(s) the other party to the contract." *Zumpano v. Omnipoint Commc'ns, Inc.*, 2001 U.S. Dist. LEXIS 376, *5 (E.D. Pa. Jan. 18, 2001); *see also Zimmer v. CooperNeff Advisors, Inc.*, 523 F.3d 224, 228 (3d Cir. 2008).

"To prove unconscionability, a party must show that the contract is both substantively and procedurally unconscionable." *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 230 (3d Cir. 2012) (*citing Salley v. Option One Mortg. Corp.*, 925 A.2d 115, 119 (Pa. 2007)). Substantive unconscionability refers to whether the terms of the agreement unreasonably favor the party moving to compel arbitration. *Zimmer v. CooperNeff Advisors, Inc.*, 523 F.3d 224, 228 (3d Cir.

---

[1] While Defendant cites to *MacDonald v. CashCall, Inc.*, 883 F.3d 220, 226 (3d Cir. 2018) and *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) regarding the "rigorous" way that courts enforce arbitration agreements, it is important to note that the *MacDonald* court found the arbitration agreement at issue invalid due to the illusory arbitral forum designation, and in *Epic Sys. Corp.*, unlike here, the Supreme Court did not have to decide whether the arbitration agreement at issue was unconscionable.

[2] As the Arbitration Agreement does not contain a "delegation provision," the Court maintains the jurisdiction to decide issues related to the enforceability of the Arbitration Agreement, as a whole. *See MacDonald*, 883 F.3d at 227 n.5 (discussing *South Jersey Sanitation Co., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 840 F.3d 138 (3d Cir. 2016)). To the extent that Defendant subsequently argues that the Arbitration Agreement does somehow contain a "delegation provision," Plaintiff would challenge its enforceability under the same grounds identified herein related to the Arbitration Agreement, as the "delegation provision" would suffer from the same defects.

2008). Procedural unconscionability, in essence, includes the process by which an agreement is entered into. *Id.* The Pennsylvania Supreme Court has advanced a "sliding-scale approach" such that "'where the procedural unconscionability is very high, a lesser degree of substantive unconscionability may be required' and … vice-versa." *Styczynski* 2018 U.S. Dist. LEXIA 203871 at *9 (internal citations omitted). The Third Circuit adopts the same approach noting, "where the procedural unconscionability is very high, a lesser degree of substantive unconscionability may be required and presumably, *vice-versa.*" *Quilloin*, 673 F.3d at 230.

### 1. The Arbitration Agreement is procedurally unconscionable because it is a contract of adhesion between parties of unequal bargaining power

The Arbitration Agreement is procedurally unconscionable as a contract of adhesion to which Plaintiff, under her personal circumstances, was economically compelled to accept. "Procedural unconscionability examines the process leading to the formation of the contract and the form and language of the agreement." *Zimmer v. CooperNeff Advisors, Inc.*, 523 F.3d 224, 228 (3d Cir. 2008). "Procedural unconscionability is generally found where there is a contract of adhesion—a contract prepared by a party with excessive bargaining power and presented to the other party on a 'take it or leave it' basis." *Kelly Hopkins, et al. v. New Day Financial, et al.*, 643 F.Supp.2d 704, 717 (E.D. Pa. 2009). A contract of adhesion is a "standard-form contract prepared by one party, to be signed by the party in a weaker position … who adheres to the contract with little choice about the terms." *Chepkevich v. Hidden Valley Resort, L.P.*, 607 Pa. 1, 2 A.3d 1174, 1190 (Pa. 2010). Procedural unconscionability also refers to the form of an arbitration agreement, including the use of "convoluted or unclear language." *Harris*, 183 F.3d 181. In determining whether a contract rises to the level of procedural unconscionability, the court must consider the following factors: "the take-it-or-leave-it nature of the standardized form of the document, the parties' relative bargaining positions, and the degree of economic compulsion motivating the

adhering party." *Quilloin*, 673 F.3d at 236 (*Salley v. Option One Mortg. Corp.*, 592 Pa. 323, 341, 925 A.2d 115, 125 (2007)).

"A procedurally unconscionable contract is one marked by 'a lack of meaningful choice in the acceptance of the challenged provision.'" *Quilloin*, 673 F.3d at 236 (quoting *Salley*, 925 A.2d at 119); *Alexander*, 341 F.3d at 266 ("This element is generally satisfied if the agreement constitutes a contract of adhesion[.]"); *see also Porreca and Charles Walton v. The Rose Group d/b/a Applebee's Neighborhood Grill and Bar*, 2013 U.S. Dist. LEXIS 173587, *24–25 (E.D. Pa. Dec. 11, 2013) (finding that the plaintiff was not on equal footing with defendant and economically compelled to accept terms of arbitration agreement where, although plaintiff had other job offers, they were not on par with defendant's offer); *Lucey v. FedEx Ground Package Systems, Inc.*, 2009 App. LEXIS 839, *4 (3d Cir. Jan. 8, 2019) (finding that plaintiffs were financially committed to working for defendant, even though they were not yet employed and thus, "walking away" was not a fair option).

Presenting an arbitration agreement in the manner used by Defendant in this matter, weighs in favor of finding the Arbitration Agreement procedurally unconscionable. For example, in *Porreca*, the court found the arbitration agreement at issue procedurally unconscionable because it was presented to the plaintiff as a take-it-or-leave-it proposal. The *Porreca* court was unpersuaded by the defendant's argument that it had reviewed part of the agreement with him in detail; the agreement (which he signed) included a provision that he carefully read and understood the agreement; and, he was given an opportunity (and a copy of the agreement) to discuss the same with an attorney. 2013 U.S. Dist. LEXIS 173587. The *Porreca* court, recognized that a defendant arguing that an employee had read and understood the agreement was meaningless given the absence of any choice to the plaintiff in whether or not to sign it. *Id.* at *22. Here, Plaintiff was

presented with the agreement and required to sign it if she wanted to be employed by Defendant. Accepting the agreement was a condition of her employment.

Courts have also found arbitration agreements to be procedurally unconscionable when the bargaining power between the parties was unequal or when a party was economically compelled to accept the arbitration agreement. In determining whether a party to an agreement had sufficient bargaining power to render same enforceable, courts also consider whether the party against whom enforcement is sought was economically compelled to accept an offer of employment requiring arbitration of potential claims. *See Porreca*, 2013 U.S. Dist. LEXIS 173587, at *24–25; *see also Lacey*, 2009 App. LEXIS 839, at *4. "[D]etermining whether a party has sufficient bargaining power is fact dependent." *Hopkins*, 643 F.Supp.2d at 718 (finding that an arbitration agreement was procedurally unconscionable where plaintiffs were not aware of the requirement to sign an arbitration agreement before it was presented to them on their first day of employment). Courts within the Eastern District of Pennsylvania have rejected the notion that a plaintiff's education or skill renders bargaining power between the parties equal. *Porreca*, 2013 U.S. Dist. LEXIS 173587, at *23–25 (rejecting a defendant's argument that bargaining power between the parties was equal because the plaintiff had an "Ivy League" education)[3]; *see also Hopkins,* 643 F.Supp.2d at *717–18.

Here, as in *Porreca*, the language of the Arbitration Agreement itself makes clear that it is a contract of adhesion, presented to Plaintiff on a take-it-or-leave-it basis. The Arbitration Agreement includes that:

> The parties acknowledge that entering into this Agreement is a condition of the Employee becoming employed by or continuing to be employed by GIBBONS.

---

[3] The *Porreca* court also rejected a defense argument that the availability of other job opportunities to the plaintiff rendered the bargaining power equal. 2013 U.S. Dist. LEXIS 173587, at *23–25.

*See* Defendant's Motion at Exhibit A, p. 1. In other words, it did not matter whether or not Plaintiff agreed to arbitration; by accepting Defendant's offer of employment, the Arbitration Agreement was forced on her. Defendant's contention that Plaintiff could simply work elsewhere is not dispositive of the issue of whether the Arbitration Agreement was procedurally unconscionable. *See Porreca*, 2013 U.S. Dist. LEXIS 173587 at *24–25. As of the time that the Arbitration Agreement was presented to Plaintiff: (i) she understood that it was a standardized agreement provided to all employees of Defendant; (ii) she understood that the Arbitration Agreement was non-negotiable; (iii) she understood that Defendant's offer of employment was conditioned on her acceptance of the Arbitration Agreement; (iv) she was unemployed; (v) she had no other alternative legal employment opportunities; and (vi) she had student loans and otherwise was in no financial positon to reject Defendant's offer of employment. *See* Dec. of Seme at ¶¶ 2–8. Thus, rejecting Defendant's offer of employment (and its take-it-or-leave-it terms) was not a reasonable alternative for Plaintiff in light of her personal and financial circumstances. *Id.* Further, the parties' bargaining power was grossly unequal, and Plaintiff was economically compelled to accept employment and thus the Arbitration Agreement's terms. Based on the above, it is clear that the Arbitration Agreement at issue is a contract of adhesion and, as such, it is procedurally unconscionable. *See, e.g., Porreca*, 2013 U.S. Dist. LEXIS 173587. Moreover, Defendant's reliance on Plaintiff's education level is misplaced and does not excuse an otherwise unenforceable and unconscionable agreement because, regardless of her status as a lawyer, Plaintiff lacked any meaningful ability to negotiation the terms of the Arbitration Agreement proposed by Defendant

or even know the governing arbitration rules and procedures.[4] *See* Exhibit A, Dec. of Seme at ¶¶ 2–8, 9–10.

Here, the Plaintiff could either accept the Arbitration Agreement (employment with a private-practice law firm with significant professional visibility and exposure in a major legal market), or she could reject the Arbitration Agreement and remain unemployed. Accordingly, the Arbitration Agreement is a procedurally unconscionable contract of adhesion and unenforceable.

### 2. The Arbitration Agreement is substantively unconscionable because it unreasonably and grossly favors Defendant

The Arbitration Agreement is substantively unconscionable because it forces Plaintiff's claims into a biased arbitral forum that grossly favors the Defendant. The bias in favor of the Defendant is concentrated by the Defendant's multiple business relationships with AAA and other related conflicts—none of which were disclosed to the Plaintiff when she was told to sign the agreement if she wanted to be employed. As a result, and in combination with the procedural unconscionability described above, the Defendant's Motion must be denied.

Substantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent. *Harris*, 183 F.3d at 181. An agreement is substantively unconscionable where the proposed alternative forum, *i.e.*, arbitration, alters and/or limits the rights and remedies available to the party seeking relief. *See Edwards v. HOVENSA, LLC*, 497 F.3d 355, 364 (3d Cir. 2007). Cases enforcing arbitration "are grounded on the premise that arbitration clauses substitute one procedurally fair forum for another." *Id*. The Supreme Court has recognized that "by agreeing to arbitrate a statutory claim, a

---

[4] Defendant's citation to *Romero v. Allstate, Inc., Co.*, 158 F. Supp. 3d 369, 383, is distinguishable because here, unlike there, the subject agreement was not "short and fully understandable." Instead, the Arbitration Agreement failed to specifically reference (or attach) the applicable AAA rules and procedures. Thus, making it impossible for Plaintiff to fully appreciate the rights that she was giving up.

party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Gilmer v. Interstate/Johnson Lane Corp.*, 111 S.Ct. 1647, 1652 (1991) (*citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 105 S.Ct. 3346, 3354 (1985)). "A party who has agreed to arbitrate disputes may nevertheless go to court if she demonstrates that she cannot vindicate her federal statutory rights in arbitration." *Beery v. Quest Diagnostics, Inc.*, 953 F. Supp. 2d 531, 537 (D.N.J. 2013) (*citing Gilmer*, 500 U.S. at 28).

Courts have consistently recognized that arbitration provisions that confer an 'unfair advantage' upon the party with greater bargaining power are substantively unconscionable." *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 204 (3d Cir. 2010). "Numerous factors may make an arbitration provision substantively unconscionable, including severe restrictions on discovery, high arbitration costs borne by one party, limitations on remedies, and curtailed judicial review." *Ostroff v. Alterra Healthcare Corp.*, 433 F. Supp. 2d 538, 453 (E.D. Pa. 2006) (internal citations omitted). Essentially, an arbitration provision is substantively unconscionable if it "creates an arbitration procedure that favors one party over another." *Id.* (*citing Johnson v. West Suburban Bank*, 225 F.3d 366, 378 n.5 (3d Cir. 2000)).

### a. The Arbitration Agreement is substantively unconscionable because it mandates submission of Plaintiff's statutory claims to an inherently unfair and biased arbitral forum

The Arbitration Agreement is substantively unconscionable because it requires Plaintiff to litigate her case in an inherently unfair and biased forum. The arbitral forum created under the Arbitration Agreement is biased and favors Defendant, particularly in light of the multiple ties— financial and otherwise—between Defendant and the arbitral forum.[5] "At a minimum, statutory

---

[5] Consistent with the reasons underlying Plaintiff's arguments below, Defendant's attempt to enforce this agreement, in and of itself, is evidence of the fact that Defendant knows that the Arbitration Agreement is not "fair" to Plaintiff and that arbitration favors itself.

rights include both a substantive protection and access to a neutral forum in which to enforce those protections." *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1482 (DC Cir. 1997). An arbitration agreement cannot "accede to procedures utterly lacking in the rudiments of even-handedness." *Nino*, 609 F.3d at 204.

In the employment context, it is always the employers and virtually never the employees who are repeat players in arbitrations. "Unlike a judge, an arbitrator is neither publicly chosen nor publicly accountable." *Cole*, 105 F.3d at 1476. As Judge Schiller recognized, "[t]here is a reason that arbitration is the favored venue of many businesses for deciding employment disputes, and it is not to ensure that employees are afforded the best chance to have their claims adjudicated by a judge or jury picked from the community." *Porreca*, 2013 U.S. Dist. LEXIS 173587, at *42.

Employees are less likely to prevail in arbitration and, if successful, less likely to recover an award of comparable size to that given by a jury. Notably, Judge McHugh recently recognized "that employee win rates in the arbitral forum are significantly lower than in employment litigation trials [and that] median award amounts in the arbitration are five to ten times lower than awards reported in employment litigation." *Styczynski v. MarketSource, Inc.*, 2018 U.S. Dist. LEXIS 203871, at *30 (E.D. Pa. Nov. 30, 2018) (*citing* Alexander J. S. Colvin, *An Empirical Study of Employment Arbitration: Case outcomes and Processes*, 8 J. Empl. Legal Stud. 1, 1–14 (2011)). In fact, one researcher determined that "employees are nearly forty percent more likely to win and receive average awards nearly twice as large in cases adjudicated in the civil litigation system compared to those that are arbitrated." *Id.* at *31. This result is unsurprising, as "an arbitrator who issues a large punitive damages award against a company may not get chosen again by that company or others who hear of the award." Jean R. Sternlight, *Panacea or Corporate Tool?*

*Debunking the Supreme Court's Preference for Binding Arbitration*, 74 Wash. U. L.Q. 637, 685 (1996).

Employees are even more disadvantaged when they are going against an arbitrator who has a repeat business relationship with the employer. That is because "the employer gains some advantage in having superior knowledge with respect to selection of an arbitrator." *Cole*, 105 F.3d at 1476. According to the Equal Employment Opportunity Commission ("EEOC"), "the employee is generally less able to make an informed selection of arbitrators than the employer, who can better keep track of the arbitrator's record. In addition, the results cannot but be influenced by the fact that the employer, and not the employee, is a potential source of future business for the arbitrator." U.S. EEOC, Notice No. 915.002, Policy Statement on Mandatory Binding Arbitration of Employment Discrimination Disputes as a Condition of Employment (July 10, 1997) (found at: https://www.eeoc.gov/policy/docs/mandarb.html (last visited on March 22, 2019)).[6] It is therefore no surprise that studies demonstrate employees are less likely to prevail in a repeat arbitrator setting and, if successful, recover less money. One study found that "employees win 23.4% of cases that don't involve a repeat-employer-arbitrator paring but only 12.0% of cases involving a repeat paring and that the average damage award was $27,039 in cases not involving a repeat paring but only $7,451 in cases involving a repeat-employer-arbitrator pairing." *Styczynski*, 2018 U.S. Dist. LEXIS 203871, at *30 (*citing* Alexander J. S. Colvin, *An Empirical Study of Employment Arbitration: Case outcomes and Processes*, 8 J. Empl. Legal Stud. 1, 1–14 (2011). Another study concluded that employees recover less in their claims against companies who are

---

[6] *See also* Reginald Alleyne, *Statutory Discrimination Claims: Rights "Waived" and Lost in the Arbitral Forum*, 13 Hofstra Lab. L. J. 381, 426 (1996) ("Arbitrators will likely receive successive arbitration assignments from the same employer with far greater frequency than they will arbitrate for the same individual employee claimant"); Jean R. Sternlight, *Panacea or Corporate Tool? Debunking the Supreme Court's Preference for Binding Arbitration*, 74 Wash. U. L.Q. (1996) ("Arbitrators may be consciously or unconsciously influenced by the fact that the company, rather than the employee, is a potential source of repeat business").

"repeat players" in the arbitration process, defined as using arbitration more than once per year, than they do against "non-repeat players." Jean R. Sternlight, *Panacea or Corporate Tool? Debunking the Supreme Court's Preference for Binding Arbitration*, 74 Wash. U. L.Q. 637, 685 (1996), *citing* Lisa B. Bingham, *Employment Arbitration: The Effect of Repeat-Player Status, Employment Category and Gender on Arbitration Outcomes* (1996) (unpublished).

Judge McHugh recognized that even reputable institutions such as JAMS and AAA are not immune from bias. *Styczynski*, 2018 U.S. Dist. LEXIS 203871, at *35–36. A *New York Times* article detailed that contacted more than three dozen arbitrators who stated that "they felt beholden to companies. Beneath every decision, the arbitrators said, was the threat of losing business." *In Arbitration, a 'Privatization of the Justice System,'* Jessica Silver-Greenberg and Michael Corkery, *New York Times* (Nov. 1, 2015). In fact, "one arbitrator confessed that 'plaintiffs had an inherent disadvantage,' saying '[w]hy would an arbitrator cater to a person they will never see again?" *Id.*

In light of these many concerns, Plaintiff's counsel recently submitted a Questionnaire to proposed AAA Arbitrators in another matter. *See* Exhibit B, Dec. of Console at ¶ 1. The purpose of the Questionnaire was simple: to ensure that the individuals deciding all issues of plaintiff's case would not be predisposed to rule against him. *See id.* at ¶ 2. Simply put, if an arbitrator would be stricken for cause from serving on a jury deciding plaintiff's claims, then that same arbitrator should not be permitted to adjudicate plaintiff's claims as an arbitrator.[7] These limited fifteen (15)

---

[7] The Third Circuit has explained that juror bias may consist of "actual bias," or "implied bias," which is "bias attributable in law to the prospective juror regardless of actual partiality." *United States v. Mitchell*, 690 F.3d 137, 142 (3d Cir. 2012). The court will imply bias and "disqualify jurors whose connection with the litigation makes it highly unlikely that they can remain impartial adjudicators." *Id.* at 144. Categories of presumptive bias include, without limitation: where the prospective juror is an employee/employer of a party (*Smith v. Phillips*, 455 U.S. 209, 232 (1982)); is a stockholder in a corporation that has an interest in the matter (*Cordes v. Assocs. Of Internal Med.*, 87 A.3d 829, 839–40 (Pa. Super. Ct. 2014); has any direct pecuniary interest in the matter (*Id.*); stands in relation to a party by contract (*McHugh v. P&G Paper Prods. Co.*, 776 A.2d 266, 271 (Pa. Super. Ct. 2001); has any financial interest in the case (*United States v. Harper*, 2014 U.S. Dist. LEXIS 101495, *29 (D.V.I. July 25, 2014)); performed former jury service in the same cause (*Id.*).

questions were specifically targeted to eliminate any potential arbitrator bias and to ensure that plaintiff had all aspects of his claim adjudicated by a true "neutral." However, counsel for defendant in that matter objected to the questionnaire and AAA did not allow the plaintiff to submit the Questionnaire to the proposed arbitrators and uncover the requested information. *See id.* at ¶ 3.

Plaintiff's inquiries are especially important because, as the Supreme Court recognized, courts "should, if anything, be even more scrupulous to safeguard the impartiality of arbitrators than judges, since the former have completely free rein to decide the law as well as the facts and are not subject to appellate review. We can perceive no way in which the effectiveness of the arbitration process will be hampered by the simple requirement that arbitrators disclose to the parties any dealings that might create an impression of possible bias." *Commonwealth Coatings Corp. v. Cont'l Cas. Co.*, 393 U.S. 145, 148–49 (1968). "This rule of arbitration and this canon of judicial ethics rest on the premise that any tribunal permitted by law to try cases and controversies not only must be unbiased but also must avoid even the appearance of bias. We cannot believe that it was the purpose of Congress to authorize litigants to submit their cases and controversies to arbitration boards that might reasonably be thought biased against one litigant and favorable to another." *Id.* at 150.

Due to the biased nature of the arbitration system, employees are less likely to prevail in general and if they are before an arbitrator who has a repeat business relationship with the employer, even less likely to prevail. *See Styczynski*, 2018 U.S. Dist. LEXIS 203871, at *35–36. Here, Plaintiff's concerns for a fair forum are heightened in light of Defendant's unique relationship with and ability to influence AAA. Specifically, Defendant has a business relationship with AAA, evidenced by their standard employment contract requiring that claims brought by its

current/former employees be mediated and arbitrated through AAA. Moreover, Defendant, as a law firm, is in a position to advise clients to adopt similar arbitration agreements and presumably contract through AAA. In addition, Defendant employs lawyers who themselves serve as mediators and arbitrators for AAA. *See* Dec. of Seme at ¶ 12. The Defendant shares in the proceeds that its employee mediator and arbitrators bill to AAA for their work. *See id.* at ¶ 12. Thus, it is undeniable that AAA is susceptible to being influenced and partial to Defendant in an arbitration in this matter. Defendant's concealment of the above conflicts at the time it presented Plaintiff with a contract of adhesion weighs heavily in favor of finding unconscionability. The Arbitration Agreement therefore unreasonably and grossly favors Defendant, such that it is rendered substantively unconscionable.[8]

### b. The Arbitration Agreement is substantively unconscionable because it substantially limits the discovery to which Plaintiff would be entitled in Court

An arbitration agreement may also be substantively unconscionable where it "alter[s] or limit[s] the rights and remedies available to that party in the arbitral forum." *Edwards*, 497 F.3d at 364. "Although arbitration proceedings may, and often do, provide much more limited discovery procedures than is common in regular court proceedings, a party must be provided a fair opportunity to present its claims." *Ostroff*, 433 F. Supp. 2d at 546. Discovery limitations that prohibit the plaintiff from having a fair opportunity to present his claims render an agreement unconscionable and, therefore, unenforceable. *Ostroff*, 433 F. Supp. 2d at 545. Indeed, "one

---

[8] Additionally, Defendant's reliance on the "multiple avenues by which each party may vindicate its rights," *e.g.*, through mediation and an appeal process (all of which are handled by AAA), are similarly positioned to grossly favor Defendant for the same asserted reasons related to Defendant's preference for a biased arbitration process. *See* Defendant's Motion at p. 9.

requirement for an enforceable arbitration agreement is more than minimal discovery." *Ostroff*, 433 F. Supp. 2d at 546.

For an arbitration provision limiting discovery to be enforceable, a plaintiff must have the ability to engage in discovery sufficient to gather the information needed to present his or her claims. *Lucey v. FedEx Ground Package Sys.*, 2007 U.S. Dist. LEXIS 77454, at *35 (D.N.J. Oct. 18, 2007). In *Ostroff*, the court held that an arbitration provision was unconscionable because discovery limitations prevented the plaintiff from gathering the information she would need to argue her claim and therefore, "[p]laintiff's limited information [would] put her at a distinct disadvantage in arbitration." 433 F. Supp. 2d at 545.[9]

Under the Federal Rules of Civil Procedure, a party may "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). During discovery, a plaintiff is permitted to conduct up to ten (10) depositions as a matter of right, and additional depositions with the leave of court. Fed. R. Civ. P. 30. The employee-plaintiff litigating in court also has access to discovery tools such as interrogatories, subpoenas, and requests for admission, among others, to build his case. Fed. R. Civ. P. 33, 35, 45.

---

[9] *See also Penn v. Ryan's Family Steak Houses, Inc.*, 269 F.3d 753, 757 (7th Cir. 2001) (finding that discovery limitations inhibited plaintiff's ability to vindicate claims because "employment disputes are often extremely fact-intensive battles between witnesses with sharply different recollections of events"); *Guyden v. Aetna, Inc.*, 2006 U.S. Dist. LEXIS 73353, at *18–19 (D. Conn. Sept. 25, 2006) (finding that discovery limitations unfairly advantaged defendant "since the employee generally requires more discovery than the employer, which generally has ready access to most information relevant to the claim and can often present a defense based only on the deposition of the complaining employee"); *Walker v. Ryan's Family Steak Houses, Inc.*, 289 F. Supp. 2d 916, 925 (M.D. Tenn. 2003) ("employment claims often require an employee to conduct man depositions (*e.g.*, coworkers, supervisors, etc.) to make out her case, while employers are often able to defend such claims with only one deposition—that of the employee. Thus, employees usually have a need for more discovery than employers, and stringent limitations on depositions ... more heavily burden the employee than the employer.").

The Arbitration Agreement at issue subjects the parties to the "AAA arbitration rules."[10] Regarding the scope of discovery, the AAA employment arbitration rules simply state that:

> The arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration.

*See* Exhibit C at p. 14, a true and correct copy of the present AAA Employment Arbitration Rules.

Here, the arbitrator, who may or may not have direct ties to Defendant, is vested with full discretion regarding Plaintiff's access to the material discovery needed to meet her burden of proof as to each of her claims. Notably, the potential arbitrator's authority related to the scope of discovery is modified to ensure that discovery is "consistent with the expedited nature of arbitration"—which serves only to the detriment of Plaintiff who carries a heavy burden. *See id*. Due to Plaintiff's burden in establishing intentional discrimination, it is reasonable and likely that she will need appropriate discovery under Fed. R. Civ. P. 26 referring to and relating to the promotions, pay, and terminations of associate attorneys with Defendant during Plaintiff's employment.

In light of the far more expansive discovery to which an employee-plaintiff is entitled in federal court and the longstanding principle that "depositions are the factual background where the vast majority of litigation actually takes place," the discovery limitations governing Defendant's Arbitration Agreement clearly prejudices Plaintiff and operates to the advantage of Defendant. *Dykeman v. McGill*, 2018 U.S. Dist. LEXIS 37174, at *2 (D.N.J. Mar. 6, 2018) (*citing Hall v. Clifton Precision, a Div. of Litton Sys., Inc.*, 150 F.R.D. 525, 531 (E.D. Pa. 1993)). Defendant has

---

[10] Significantly, the Arbitration Agreement does not specify which "AAA arbitration rules" govern this dispute. *See* Defendant's Exhibit A at p. 1. Without waiving any argument regarding the enforceability of the Arbitration Agreement on the grounds that it improperly failed to identify specific AAA rules governing an arbitration of Plaintiff's claims, as argued herein, in presuming the applicable "AAA arbitration rules," she references AAA's present Employment Arbitration Rules and Procedures.

access to all fact witnesses and documentary evidence relevant to its defenses, thereby eliminating its need to conduct much of any discovery. Plaintiff, on the other hand, alleges that she was terminated in violation of federal and state laws after over eight (8) years of dutiful employment with Defendant. The *McDonnell-Douglas* pretext model requires Plaintiff to establish inconsistencies, contradictions, and implausibilities so as to enable a fact-finder to conclude that the stated reasons for its adverse action is merely pretext to mask Defendant's true, illegal and discriminatory motives. Thus, each deposition of each witness (manager, former manager, decision-maker, human resources personnel, co-worker, comparator, etc.) will add significant brush strokes to the canvas to allow the fact-finder to see the picture of pretext and infer that illegal motivation was at play in this case. Indeed, the self-serving discovery limitations that govern the Arbitration Agreement drafted by Defendant are grossly prejudicial to Plaintiff and severely undermine her ability to vindicate her claims under Title VII, the PHRA, and the PFPO, rendering the Arbitration Agreement substantively unconscionable.

### c. The Arbitration Agreement is procedurally and substantively unconscionable because it includes language that unreasonably favors Defendant

The Arbitration Agreement at issue is also both procedurally and substantively unconscionable because it includes unclear language terms that unreasonably favors Defendant. As set forth above, the Arbitration Agreement merely provides that:

> Except as expressly set forth herein, AAA's arbitration rules shall govern the arbitration process.

*See* Defendant's Motion at Exhibit A, p. 1.

The Arbitration Agreement failed to define, in any way, which "AAA's arbitration rules" would apply to a potential dispute. The Arbitration Agreement did not attach the applicable "AAA arbitration rules" and Defendant did not subsequently provide information regarding same to

Plaintiff. *See* Dec. of Seme at ¶¶ 9–10. ***Defendant*** obviously knew about the applicable AAA rules, and what they entailed, as they tried to bind Plaintiff to same in the Arbitration Agreement and presumably arbitrated in this forum before. ***Defendant*** knew the terms of the agreement, while Plaintiff did not. ***Defendant*** knew that the applicable AAA arbitration rules limited Plaintiff's (and other employees) rights to which they would be entitled to in court, *i.e.,* (and as set forth above) significantly limited discovery, while Plaintiff did not. Substantive unconscionability is demonstrated, as here, where the party asserting that an agreement is unenforceable shows that he or she had "no meaningful choice, no real alternative, or did not in fact assent or appear to assent to the unfair terms." *See Harris*, 183 F.3d at 181 (*citing* Restatement (Second) of Contracts § 208 cmt. d.).

> **d. The unconscionable provisions of the Arbitration Agreement cannot be severed because these provisions demonstrate a systematic effort to create a pro-employer forum that works to Defendant's advantage and Plaintiff's detriment**

The unconscionable provisions of the Arbitration Agreement cannot be severed. Where aspects of an agreement are unenforceable, "a court may nevertheless enforce the rest of the agreement in favor of a party who did not engage in serious misconduct if the performance as to which the agreement is unenforceable is not an essential part of the agreed exchange." *Nino*, 609 F.3d at 206 (*citing* RESTATEMENT (SECOND) OF CONTRACTS § 184(1)). This determination "calls for an examination of the specific nature of the provisions themselves" and involves two lines of inquiry. *Id.* The first consideration is whether the unconscionable provisions comprise essential elements of the arbitration agreement as a whole. *Id.* (*citing Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 214 (3d Cir. 2003)). The second consideration is "whether the unconscionability of the arbitration clause demonstrates 'a systematic effort to impose arbitration on an employee, not simply as an alternative to litigation, but as an inferior forum that works to the employer's

advantage." *Id.* (*quoting Parilla*, 368 F.3d at 288). Put differently, "a multitude of unconscionable provisions in an agreement to arbitrate will preclude severance and enforcement of arbitration if they evidence a deliberate attempt by an employer to impose an arbitration scheme designed to discourage an employee's resort to arbitration or to produce results biased in the employer's favor." *Id.* (*quoting Parilla*, 368 F.3d at 289). Each of these two considerations provide separate and independent bases for declining to sever the unconscionable provisions from the Arbitration Agreement. *See id.* at 207.

First, as discussed at length herein, the unconscionable provisions comprise essential elements of the Arbitration Agreement as a whole. Second, the Arbitration Agreement demonstrates a systematic effort to impose an inferior forum to Plaintiff and one that works to Defendant's advantage. As such, the unconscionable provisions of the Arbitration Agreement cannot be severed.

### C. The Federal Arbitration Act Violates Plaintiff's Seventh Amendment Right to a Jury Trial

Defendant's argument that the FAA and the Arbitration Agreement mandate Plaintiff give up her constitutional right to a jury trial should fail because it violates Plaintiff's Seventh Amendment right to a jury trial and Fourteenth Amendment right to due process. The Seventh Amendment states:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

The Supreme Court has proclaimed: "[a]s the right of jury trial is fundamental, courts indulge every reasonable presumption against waiver." *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937). Nevertheless, Defendant seeks to deprive Plaintiff of her right to a jury trial through an

amorphous forced arbitration process by invoking a federal statute at odds with the Bill of Rights. Such a result should not be permitted because the right to a jury trial under the Seventh Amendment "is fundamental to our scheme of ordered liberty and system of justice" that should not be infringed upon by federal or state statute. *McDonald v. City of Chi.*, 561 U.S. 742, 764 (2010).

Recently, the Supreme Court held that the Second Amendment was "fundamental" and any law that infringes upon it violates the constitutionally protected due process rights of citizens. *Id.* at 744–45. That case, and the Supreme Court's analysis, is applicable here. In *McDonald*, the Supreme Court set forth the following test to determine whether a right set forth in the Bill of Rights should be incorporated and thus not infringed upon by federal or state statute: whether the right is "fundamental to *our* Nation's scheme of ordered liberty … or, as the Court has said in a related context, whether it is deeply rooted in this Nation's history and tradition." 561 U.S. at 767, (*quoting Washington v. Glucksberg*, 521 U.S. 702, 721 (1997)).

In doing so, the Court "explored the right's origins in English law and noted the esteem with which the right was regarded during the colonial era and at the time of the ratification of the Bill of Rights," finding it was "powerful evidence that the right was regarded as fundamental in the sense relevant here." *McDonald*, 561 U.S. at 745. In its analysis, the Court found that because state constitutions recognized a right to keep and bear arms around the time the Bill of Rights was passed that the founding fathers regarded the Second Amendment to be fundamental to our Country's scheme of liberty and system of justice. *Id.* at 767–78.

Applying this same analysis to the Seventh Amendment right to a jury trial leads to the same result. In fact, the factors weigh more heavily in favor of the right to a jury trial than they do to the right to keep and bear arms. For example, the Court in *McDonald* found that "[i]n 1868, 22 of the 37 States in the Union had state constitutional provisions explicitly protecting the right to

keep and bear arms" and found this fact particularly persuasive in concluding the right is "fundamental." *Id.* at 777 (*citing* Calabresi & Agudo, *Individual Rights Under State Constitutions When the Fourteenth Amendment Was Ratified in 1868: What Rights Are Deeply Rooted in American History and Tradition?*, 87 Texas L. Rev. 7, 50 (2008)). This same law review article also discussed the Seventh Amendment, advocating that it should be recognized as an incorporated right. *Id.* at 77–78. In support, the article highlighted that 36 of 37 states in 1868 guaranteed the right to jury trials in all civil or common law cases, emphasizing that "fully 98% of all Americans in 1868 lived in jurisdictions where they had a fundamental state constitutional right to jury trial in all civil or common law cases." *Id.* The Supreme Court has not analyzed the specific issue of the incorporation of the Seventh Amendment since the doctrine of selective incorporation was adopted in 1960 and has never analyzed whether the infringement of the right to a jury trial violates the Seventh Amendment under the factors set forth in *McDonald. See, e.g., Gideon v. Wainright*, 372 U.S. 335, 341 (1963). However, the reasoning set forth by the Supreme Court in *McDonald* can only lead to one conclusion for the Seventh Amendment, that in fact it is "a fundamental right."

Therefore, Plaintiff requests that the Court reject Defendant's invocation of the FAA, strike down Defendant's mandatory Arbitration Agreement, and uphold Plaintiff's right to have her case decided by a jury of her peers as the founding fathers sought and fought to guarantee.

**D.      In the Event the Court does not find the Arbitration Agreement Invalid and Unenforceable on its Face, the Court Should Grant Plaintiff Leave to take Limited Discovery Regarding the Arbitration Agreement's Validity and Enforceability**

Should this Court not find the Arbitration Agreement invalid and unenforceable on its face, then Plaintiff respectfully requests leave to take discovery regarding the validity of the Arbitration Agreement and the fairness of its terms. As discussed above, "if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in

issue, then the parties should be entitled to discovery on the question of arbitrability." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013).

Throughout the foregoing sections and in her declaration, Plaintiff alleges specific facts that call into question the enforceability of the Arbitration Agreement, the fairness of its terms, and the fundamental fairness of the arbitral forum. Therefore, to the extent that the Court does not deny Defendant's Motion outright, Plaintiff requests limited discovery. *See Burgos v. Trans Unions, LLC*, 2017 U.S. Dist. LEXIS, *14–15 (E.D. Pa. May 18, 2017) (allowing limited discovery to allow Plaintiff to supplement the record to prove her claims of substantive unconscionability); *Griffin v. Credit One Fin.*, 2015 U.S. Dist. LEXIS 146601, *4 (E.D. Pa. Oct. 29, 2015) (ordering limited discovery on the issue of whether an enforceable arbitration agreement existed); *Hopkins*, 2008 U.S. Dist. LEXIS 52009, at *7–8 (permitting the plaintiffs to take discovery regarding the validity of the arbitration agreement and the bias of the arbitral forum provided for in the agreements).[11]

## IV.    **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion in its entirety and order Defendant to file an Answer to the Complaint. In the alternative, Plaintiff requests that this Court grant Plaintiff leave to take the requested limited discovery.

---

[11] Should this Court choose to grant Defendant's Motion, then this case should be stayed. The AAA provides:

> If any suit or proceeding be brought in any courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. "The plain language of § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration." *Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 269 (3d Cir. 2004). Here, if Defendant's Motion is granted, Plaintiff joins Defendant in its request for a stay.

Respectfully submitted,

**CONSOLE MATTIACCI LAW, LLC**

By:    */s/ Fernando I. Rivera*
      Laura C. Mattiacci, Esquire
      Katherine C. Oeltjen, Esquire
      Fernando I. Rivera, Esquire
      1525 Locust Street, 9th Fl.
      Philadelphia, PA 19102
      (215) 545-7676 (office)
      mattiacci@consolelaw.com
      oeltjen@consolelaw.com
      rivera@consolelaw.com

      *Attorneys for Plaintiff*

Dated:  April 2, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of April 2019, I caused the foregoing to be served, via

the Court's electronic filing system, upon counsel for Defendant below:

Sara Begley, Esquire
William Delaney, Esquire
HOLLAND & KNIGHT
2929 Arch Street, Suite 800
Philadelphia, PA 19104

*Attorneys for Defendant*

**CONSOLE MATTIACCI LAW, LLC**

By:    */s/ Fernando I. Rivera*
           Stephen G. Console, Esquire
           Laura C. Mattiacci, Esquire
           Katherine C. Oeltjen, Esquire
           Fernando I. Rivera, Esquire
           1525 Locust Street, 9th FL.
           Philadelphia, PA 19102
           (215) 545-7676 (office)
           oeltjen@consolelaw.com
           rivera@consolelaw.com
           mattiacci@consolelaw.com

           *Attorneys for Plaintiff*

Dated:  April 2, 2019