IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JENNIFER SEME | : | CIVIL ACTION |
| v. | : | |
| GIBBONS, P.C. | : | NO. 19-857 |

**MEMORANDUM**

**Padova, J.**                                                                                              **June 26, 2019**

Plaintiff Jennifer Seme commenced this employment discrimination action against her former employer, Defendant law firm Gibbons, P.C., asserting claims of gender discrimination pursuant to Title VII, the Pennsylvania Human Relations Act ("PHRA"), and the Philadelphia Fair Practice Ordinance. Defendant filed a Motion to Compel Arbitration and Stay the Action, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, asserting that the claims Plaintiff raises are subject to a valid arbitration agreement. For the following reasons, we grant Defendant's Motion.

**I.    FACTUAL BACKGROUND**

Defendant hired Plaintiff on or about March 8, 2010 as a lateral associate. (Compl. ¶ 19.) At the time of her hiring, Plaintiff had been a licensed attorney for approximately four years. (See id. ¶ 18.)

Prior to the start of her employment, on February 22, 2010, Plaintiff signed an "Agreement to Mediate and Arbitrate Claims" (the "Arbitration Agreement"). (Arb. Agreement, attached as Ex. A to Def.'s Mot.) The Arbitration Agreement states that the parties:

> consent to the resolution by arbitration of those claims, which include, but are not limited to: . . . claims alleging discrimination or harassment on any legally protected basis, . . . claims alleging wrongful termination, . . . and any other claims alleging any violation of any federal, state or other governmental law, statute, regulations or ordinance.

(Id. ¶ 4(A).) It also states that the parties "mutually agree to forego their respective right to a jury trial and agree to resolve any and all disputes through arbitration" and that "[t]he parties expressly designate the American Arbitration Association ("AAA") to administer any mediation and/or arbitration brought pursuant to this Agreement." (Id. ¶¶ 1- 2.)

According to the Complaint, throughout her eight years of employment with Defendant, Plaintiff was subjected to a sex-biased pay and promotion system that advantaged male attorneys and disadvantaged female attorneys. (Compl. at 1.) In that regard, the Complaint alleges, inter alia, that Plaintiff was paid less than her male peers, was disadvantaged by Defendant's practice of favoring male attorneys in assigning client-origination credit, and was denied promotion because of her gender. (Id. at 1-2; see also id. ¶¶ 29-31, 36, 43.) The Complaint further alleges that, in spite of Plaintiff's complaints, Defendant repeatedly failed to rectify the gender-based inequities in pay and promotion. (Id. ¶¶ 34-35, 37-41, 43-44.) On or about July 18, 2018, Plaintiff was notified that her employment would be terminated. (Id. ¶ 63.) Defendant asked Plaintiff to stay on until September on the condition that she sign a Separation and Release Agreement that released Defendant from all legal claims in connection with her employment, but Plaintiff refused. (Id. ¶¶ 67, 70.) Defendant therefore terminated Plaintiff's employment effective August 9, 2018. (Id. ¶ 70.)

Plaintiff filed her Complaint against Defendant on February 27, 2019. The Complaint asserts claims of gender discrimination pursuant to Title VII, the PHRA, and the Philadelphia Fair Practices Ordinance. On March 8, 2019, Defendant filed the instant Motion to Compel Arbitration and to Stay this Action, arguing that the claims raised the Complaint are subject to the Arbitration Agreement.

## II.     LEGAL STANDARD

Whether a district court considers a motion to compel arbitration under a Federal Rule of Civil Procedure 12(b)(6) standard or a summary judgment standard depends on whether the Complaint sets forth the basis for arbitration. "[W]hen it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard . . . .'" Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 776 (3d Cir. 2013) (quoting Somerset Consulting, LLC v. United Capital Lenders, LLC, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)). On the other hand, "a Rule 12(b)(6) standard is inappropriate when . . . 'the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity' to establish on its face that the parties agreed to arbitrate." Id. at 774 (quoting Somerset, 832 F. Supp. 2d at 482). Under the latter circumstances, we "use the summary judgment standard under Rule 56(a), in which 'the motion [to compel] should be granted where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Maddy v. Gen. Elec. Co., 629 F. App'x 437, 440 (3d Cir. 2015) (internal quotation marks omitted) (quoting Flintkote Co. v. Aviva PLC, 769 F.3d 215, 219 (3d Cir. 2014)); see also Fed. R. Civ. P. 56(a). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id.

In this case, the Complaint does not make reference to any arbitration agreement. Rather, Defendant first raises the existence of an arbitration agreement in its Motion to Compel, and it attaches the Arbitration Agreement executed by the parties to its Motion. Both Defendant and

3

Plaintiff also rely on factual evidence outside of the pleadings in arguing that arbitration is or is not appropriate. We therefore apply a summary judgment standard to resolution of Defendant's Motion.

### III. DISCUSSION

Defendant argues in its Motion that, pursuant to both the FAA and the parties' Arbitration Agreement, we should stay this action and compel Plaintiff to arbitrate her claims before the AAA. Plaintiff does not dispute that she and Defendant entered into the Arbitration Agreement and that, on its face, the Agreement would cover the claims at issue. She argues, however, that the Agreement is unenforceable because it is procedurally and substantively unconscionable.[1] She argues in the alternative that we should permit her the opportunity to conduct discovery regarding the validity of the agreement.

    A.    <u>The Federal Arbitration Act</u>

"[W]hen a party resists arbitration under an existing arbitration clause[,] . . . the FAA allows a district court to compel . . . arbitration . . . ." <u>John Hancock Mut. Life Ins. Co. v. Olick</u>, 151 F.3d 132, 136 (3d Cir. 1998) (citing 9 U.S.C. §§ 3, 4; <u>PaineWebber, Inc. v. Hartmann</u>, 921 F.2d 507, 511 (3d Cir. 1990)). Specifically, Section 4 of the FAA provides as follows:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.

---

[1] Plaintiff also argues that the enforcement of the Arbitration Agreement would violate her Seventh Amendment right to a jury trial. However, the United States Court of Appeals for the Third Circuit has held that a district court's stay of proceedings pending arbitration pursuant to the FAA does not violate the Seventh Amendment. <u>J & R Sportswear & Co. v. Bobbie Brooks, Inc.</u>, 611 F.2d 29, 30 (3d Cir. 1979); <u>see also</u> <u>Choice v. Option One Mortg. Corp.</u>, Civ. A. No. 02-6626, 2003 WL 22097455, at *8 n.14 (E.D. Pa. May 13, 2003) (explaining that "the right to a jury trial attaches . . . only after it is determined that litigation should proceed before a court" (citing <u>Snyder v. Conseco Fin. Servicing Corp.</u>, 252 F.3d 302, 307 (4th Cir. 2001))).

9 U.S.C. § 4. Furthermore, the FAA provides that when the court refers a case to arbitration pursuant to the FAA, it "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the [parties' arbitration] agreement." Id. § 3.

"Under the [FAA], arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 529 (2019) (citing Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 67 (2010)). In determining "whether a party may be compelled to arbitrate under the FAA, we first consider '(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement.'" Flintkote, 769 F.3d at 220 (quoting Century Indem. Co.v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 527 (3d Cir. 2009)).

"'Questions concerning the interpretation and construction of arbitration agreements are determined by reference to federal substantive law.'" Gay v. CreditInform, 511 F.3d 369, 388 (3d Cir. 2007) (quoting Harris v. Green Tree Fin. Corp., 183 F.3d 173, 179 (3d Cir. 1999)) (additional citation omitted). However, contract defenses that arise under state law, "'such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2 [of the FAA].'" Id. (quoting Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)). "Unconscionability is a 'defensive contractual remedy which serves to relieve a party from an unfair contract or from an unfair portion of a contract.'" Harris, 183 F.3d at 181 (quoting Germantown Mfg. Co. v. Rawlinson, 491 A.2d 138, 145 (Pa. Super. Ct. 1985)). "To prove unconscionability under Pennsylvania law, a party must show that the contract was both substantively and procedurally unconscionable." Quilloin v. Tenet HealthSystem Philadelphia,

Inc., 673 F. 3d 221, 230 (3d Cir. 2012) (citing Salley v. Option One Mortg. Corp., 925 A.2d 115, 116 (Pa. 2007)).

"'Procedural unconscionability pertains to the process by which an agreement is reached and the form of an agreement . . . .'" Alexander v. Anthony Int'l., L.P., 341 F.3d 256, 265 (3d Cir. 2003) (quoting Harris, 183 F.3d at 181). "A contract is procedurally unconscionable where 'there was a lack of meaningful choice in the acceptance of the challenged provision[.]'" Quilloin, 673 F.3d at 235 (alteration in original) (quoting Salley, 925 A.2d at 119). It will therefore "be deemed procedurally unconscionable when formed through 'oppression and unfair surprise.'" Id. (quoting Witmer v. Exxon Corp., 434 A.2d 1222, 1228 n.16 (Pa. 1981)). The requirement of procedural unconscionability "is generally satisfied if the agreement constitutes a contract of adhesion." Alexander, 341 F.3d at 265 (citations omitted). "A contract of adhesion is a 'standard-form contract prepared by one party to be signed by the party in a weaker position, usually a consumer, who adheres to the contract with little choice about the terms.'" Quilloin, 673 F.3d at 235 (quoting Chepkevich v. Hidden Valley Resort, L.P., 2 A.3d 1174, 1190 (Pa. 2010)).

A contact is substantively unconscionable if it "'unreasonably favors the party asserting it.'" Id. at 230 (quoting Salley, 925 A.2d at 119). The element of substantive unconscionability is therefore satisfied if there are terms of the agreement that "unreasonably favor one party [and] to which the disfavored party does not truly assent." Alexander, 341 F.3d at 265 (citations omitted). "An arbitration agreement cannot be construed as substantively unconscionable where it 'does not alter or limit the rights and remedies available to [a] party in the arbitral forum . . . .'" Quilloin, 673 F.3d at 230 (alterations in original) (quoting Edwards v. HOVENSA, LLC, 497 F.3d 355, 364 (3d Cir. 2007)).

6

B. Unconscionability

Plaintiff argues that the Arbitration Agreement is procedurally and substantively unconscionable, and that it is invalid on that basis. Specifically, she argues that the Agreement is procedurally unconscionable because it was presented to her as a "take-it-or-leave it" condition of employment between parties with unequal bargaining power. She argues that it is substantively unconscionable because the AAA is biased in favor of Defendant and provides her with no right to discovery.

1. Procedural Unconscionability

"[I]n determining whether a contract rises to the level of procedural unconscionability," we must consider "'the take-it-or-leave-it nature of the standardized form of the document[,]' 'the parties relative bargaining positions,' and 'the degree of economic compulsion motivating the adhering party[.]'" Quilloin, 673 F.3d at 235-36 (alterations in original) (quoting Salley, 925 A.2d at 125). In support of her assertion that the Arbitration Agreement is procedurally unconscionable, Plaintiff states in an affidavit that, in or around late-February 2009, she received from Defendant both an offer letter and a copy of the Arbitration Agreement. (Seme Decl., attached as Ex. A to Pl.'s Mem., ¶ 1.) "At the time that Defendant presented [her] with the Arbitration Agreement, [she] understood that it was a standardized agreement provided to all employees," "that [the agreement] was non-negotiable," and that "Defendant's offer of employment was conditioned on [her] acceptance of the Arbitration Agreement." (Id. ¶¶ 3-5.) When she inquired about a potential start date, she was told that she was unable to work until she signed the Arbitration Agreement. (Id. ¶ 2.) Moreover, she contends that she was subject to economic compulsion because she was unemployed when Defendant offered her the job, she had no other alternative legal opportunities, and she was not in a financial position to reject the offer.

7

(Id. ¶¶ 6-8.) Plaintiff signed the Agreement on February 22, 2010, and began her job with Defendant on March 8, 2010. (Arb. Agreement at 7; Compl. ¶ 19.)

Plaintiff contends that her situation is comparable to that of the plaintiff in Porreca v. Rose Gr., Civ. A. No. 13-1674, 2013 WL 6498392 (E.D. Pa. Dec. 11, 2013), a case in which the court found an arbitration agreement to be procedurally unconscionable. In Porreca, the plaintiff was a college drop-out who was hired as a server at Applebee's restaurant. Id. at *1, 4. During the plaintiff's orientation, he was presented with and signed an arbitration agreement after being told that he could not be hired unless he signed the agreement. Id. at *4-5. The Porreca court concluded that, under the circumstances presented, (1) the agreement was a "take-it-or-leave-it" proposal because it was a condition of the plaintiff's employment, (2) the parties were not on equal footing because defendant was a "restaurant management behemoth" and plaintiff was a college drop-out, and (3) the plaintiff was economically compelled to accept defendant's terms because "[h]e was in debt, living with his parents, and behind in his student loans." Id. at *8-9.

Plaintiff's situation is easily distinguishable from that of the plaintiff in Porreca. As an initial matter, we note that in assessing procedural unconscionability, we must take into account the education level of the individual seeking to challenge the agreement, as well as the context in which the take-it-or-leave-it-offer was made. See Quilloin, 673 F.3d at 236. Unlike the plaintiff in Porreca, Plaintiff has a graduate degree in law and, thus, was particularly well-positioned not only to understand the meaning of the arbitration agreement, but also to seek to negotiate its terms if she believed them to be contrary to her interests. Moreover, while Plaintiff has put forth evidence that she had no other job opportunities at the time that she accepted the offer from Defendant, she has not established that she was under economic pressure at the time that was comparable to that facing the plaintiff in Porreca, who was struggling with significant debt and

8

could not afford to live apart from his parents.² Furthermore, unlike the Porreca plaintiff, Plaintiff was presented with the arbitration agreement in conjunction with her offer letter, which she received "in or around late-February," and she signed the agreement on February 22, 2010, more than two weeks before she began work on March 8, 2010. (See Seme Decl. ¶ 1; Inderwies Decl., attached as Ex. A to Def.'s Reply Br., ¶ 2; Arb. Agreement at 6; Compl. ¶ 19.)

We simply cannot find the circumstances in which Plaintiff was presented with the Arbitration Agreement to be procedurally unconscionable. The record does not support a conclusion that Plaintiff "lack[ed] [a] meaningful choice" in agreeing to the arbitration agreement or that the agreement was the result of "oppression and unfair surprise." Quilloin, 673 F.3d at 235 (citation omitted). And while Plaintiff may have been eager for a job and had little bargaining power, "contracts cannot be deemed [procedurally] unconscionable 'simply because of a disparity in bargaining power.'" Id. at 235 (quoting Witmer, 434 A.2d at 1228) (additional citation omitted); see also id. ("[M]ore than a disparity in bargaining power is needed in order to show that an arbitration agreement was not entered into willingly." (quoting Great W. Mortg. Corp. v. Peacock, 110 F.3d 222, 229 (3d Cir. 1997))). Indeed, Plaintiff accepted Defendant's offer of employment, having already received a copy of the arbitration agreement and knowing that it was a condition of employment. Moreover, the degree of "economic compulsion" that Plaintiff asserts is no different from that of any unemployed individual who is looking for a job and cannot possibly suffice to support the revocation of an otherwise legal and valid contract.

---

² Plaintiff also compares her situation to that of the plaintiffs in Lucey v. FedEx Ground Package Sys., Inc., 305 F. App'x 875 (3d Cir. 2009), in which the court affirmed a finding of procedural unconscionability. However, the Lucey plaintiffs were presented with take-it-or-leave-it arbitration agreements after they had already financially committed to positions as package delivery drivers by leasing delivery trucks. Id. at 877. Accordingly, their situation was easily distinguishable from that of Plaintiff.

9

In sum, we conclude that Plaintiff has failed to establish that the arbitration agreement was procedurally unconscionable.[3]

  2. <u>Substantive Unconscionability</u>

As noted above, Plaintiff argues that the Arbitration Agreement is substantively unconscionable because it provides for a biased arbitral forum that favors Defendant, and does not provide for discovery. While we could reject Plaintiff's Motion to Compel on the basis of her inability to establish procedural unconscionability alone, we also conclude that she cannot establish substantive unconscionability. See Quilloin, 673 F. 3d at 230 (citing Salley, 925 A.2d at 116)).

  a. Biased Arbitral Tribunal

In asserting that the AAA forum that the Arbitration Agreement specifies is biased in favor of Defendant, Plaintiff cites to a recent case in this this District, <u>Styczynski v. MarketSource, Inc.</u>, 340 F. Supp. 3d 534 (E.D. Pa. 2018), which recounts research indicating both that employees prevail less frequently in arbitration than at trial and that the amount of damages that employees recover in arbitrations is statistically lower than that recovered after trial. Id. at 548-49 (citations omitted). She also cites reports that the employee win-rate and the amount of employee damages awards are even further depressed under circumstances in which an arbitration forum has repeat business with an employer. (Pl.'s Mem. at 15-16.) Additionally, Plaintiff asserts that her counsel recently attempted to counteract this proven bias in another arbitration matter by attempting to submit to the proposed AAA arbitrators a questionnaire with fifteen questions designed to

---

[3] Plaintiff also argues that the Arbitration Agreement is both procedurally and substantively unconscionable because it states that "AAA's arbitration rules shall govern the arbitration process," but does not include a copy of those rules as an attachment. (Arb. Agreement ¶ 1.) However, the arbitration rules are easily accessible on the AAA website. See *Rules, Forms, & Fees*, AM. ARB. ASS'N, https://www.adr.org/active-rules (last visited June 21, 2019).

10

determine whether the arbitrators would be predisposed to rule in the defendant's favor. (Console Decl., attached as Ex. B to Pl.'s Mem., ¶ 2.) However, AAA did not permit counsel to submit the questionnaire to the proposed arbitrators. (Id. ¶ 3.) Plaintiff maintains that the documented bias of the arbitral forum, and her proven inability to address that bias by questioning the proposed arbitrators, establishes that the Arbitration Agreement requirement that disputes be submitted to the AAA is substantively unconscionable.

However, the Styczynski court ultimately refused to find the arbitration agreement under consideration to be substantively unconscionable notwithstanding the evidence of bias. Styczynsk, 340 F. Supp. 3d at 540. In fact, the Styczynski court recognized that, in spite of its policy concerns regarding bias, it was bound by the ruling of the United States Supreme Court in Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 30 (1991), which "flatly rejected the general proposition that arbitral panels are inherently biased and 'decline[d] to indulge the presumption that the parties and the arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious and impartial arbitrators.'" Id. at 542 (quoting Gilmer, 500 U.S. at 30). We, too, are bound by Gilmer, which "reject[s] the broad assertion that arbitral panels are inherently favorable to one side." Id. at 541 (citing Gilmer, 500 U.S. at 30). We therefore reject Plaintiff's assertion that the Arbitration Agreement is substantively unconscionable because the AAA is biased in favor of Defendant.

    b.  Discovery Limitations

Plaintiff argues in the alternative that the Arbitration Agreement is substantively unconscionable because the AAA arbitration rules that apply pursuant to the Agreement do not automatically entitle Plaintiff to all of the discovery to which she would be entitled under Federal Rule of Civil Procedure 26. Instead, pursuant to the AAA arbitration rules, the arbitrator has "the

authority to order . . . discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration." (AAA Employment Arb. Rules, attached as Ex. C to Pl.'s Mem., at 14.)

Plaintiff's arguments in this regard are unavailing. The United States Supreme Court has made clear that arbitration discovery procedures are not inadequate merely because "they might not be as extensive as in the federal courts." Gilmer, 500 U.S. at 30-31. Moreover, while some "courts have found arbitration provisions substantively unconscionable in part because of limitations on discovery," Ostroff v. Alterra Healthcare Corp., 433 F. Supp. 2d 538, 546 (E.D. Pa. 2006) (citing cases), Plaintiff has identified no court that has found procedures comparable to those in the AAA rules to impede a plaintiff's "fair opportunity to present [her] claims."[4] See Gilmer, 500 U.S. at 31. Indeed, because the AAA rules grant the arbitrator full discretion to order any depositions, interrogatories, and document productions that are "necessary to a full and fair exploration of the issues" (AAA Employment Arb. Rules at 14), we conclude that the rules do

---

[4] The cases Plaintiff cites do not support her position here because they involved more stringent discovery procedures than those in this case and/or did not ultimately conclude that the discovery procedures were fatally inadequate. See Ostroff, 433 F. Supp. 2d. at 545-46 (finding arbitration provision to be substantively unconscionable when plaintiff was only allowed to depose defendant's expert witnesses. not fact witnesses); Guyden v. Aetna, Inc., Civ. A. No. 05-1652, 2006 WL 2772695, at *7 (D. Conn. Sept. 25, 2006) (rejecting argument that arbitration agreement's discovery provision that permits each party to initially take just one fact deposition and serve just one set of 10 written questions is procedurally inadequate, because plaintiff may seek additional discovery and court will not "indulge in the presumption that the arbitrator will act without equanimity to deny plaintiff's request"); Walker v. Ryan's Family Steak Houses, Inc., 289 F. Supp. 2d 916, 924-28 (M.D. Tenn. 2003) (finding arbitral forum to be inappropriate substitute for judicial forum, in part because the applicable discovery rules permit only one deposition as of right and "strongly disfavor[]" additional depositions); Penn v. Ryan's Family Steak Houses, Inc., 269 F.3d 753, 756 (7th Cir. 2001) (affirming on other grounds a district court decision that found arbitration procedures to be inherently biased against employees because they, inter alia, permitted unlimited document requests but only one deposition in the absence of "extraordinary circumstances").

not "unreasonably favor[]" Defendant, or inappropriately "alter or limit [Plaintiff's] rights and remedies." Quilloin, 673 F.3d at 230 (quotations omitted). Accordingly, we reject Plaintiff's assertion that the discovery procedures render the Arbitration Agreement substantively unconscionable.

C. Request for Discovery

Plaintiff has requested that, if we fail to find the Arbitration Agreement to be invalid and unenforceable, we permit her to take discovery regarding the validity of the Arbitration Agreement and the fairness of its terms. However, we need only permit discovery where the Plaintiff has presented "facts sufficient to place the agreement to arbitrate in issue." Guidotti, 716 F.3d at 776. Here, she has presented no such facts. There is no genuine dispute of material fact in this case that the parties entered into a valid agreement to arbitrate and that their dispute falls within the substantive scope of the agreement. We therefore conclude that Plaintiff has not established any basis on which discovery should be granted.

IV. CONCLUSION

For the reasons stated above, we reject Plaintiff's argument that the Arbitration Agreement is unconscionable and therefore unenforceable, and we grant Defendant's Motion to Compel Arbitration and Stay this Action.[5] An appropriate Order follows.

BY THE COURT:
/s/ John R. Padova, J.

John R. Padova, J.

---

[5] The Third Circuit has instructed that "the plain language of § 3 [of the FAA] affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration." Lloyd v. HOVENSA, LLC, 369 F.3d 263, 269 (3d Cir. 2004). As the Third Circuit has explained, the district court maintains an ongoing role after a case is referred to arbitration, which involves "resolving disputes regarding the appointment of an arbitrator, compelling witnesses, and entering judgment on an award." Devon Robotics, LLC v. DeViedma, 798 F.3d 136, 143-44 (3d Cir. 2015) (citing Lloyd, 369 F.3d at 270).